# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| Kristy Dean and Werner O'Connell, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 3:10-CV-183 JVB |
| ) | |
| City of South Bend, ) | |
| The South Bend Police Department, ) | |
| Officer Joshua Morgan, and the ) | |
| Chief of Police of the South Bend Police, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

Plaintiffs Kristy Dean and Werner O'Connell claim that Officer Joshua Morgan of the South Bend Police Department violated their Fourth Amendment right when he allegedly used excessive force and falsely arrested them at the Quality Inn hotel on October 24, 2008.

Plaintiffs brought this action against the City of South Bend, the South Bend Police Department, the South Bend Police Chief, and Officer Morgan individually and in his official capacity. Having reviewed the parties' briefs, and all accompanying materials, the Court grants summary judgment to Defendants on all claims.

**A. Summary Judgment Standard**

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party supports its motion for summary judgment with affidavits or other materials, it thereby shifts to the non-moving party the burden of showing that an issue of material fact exists. *Keri v. Bd. of Trust. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006).

**B. Facts**

**1. Plaintiffs' version:**

On October 23, 2008, Plaintiffs Kristy Dean and Werner O'Connell were staying at the Quality Inn in South Bend, Indiana. (Dep. of O'Connell at 15). Plaintiffs had their English Bulldog with them at the hotel. (*Id*. at 17). The dog weighs between 30 and 50 pounds. (*Id*.). While staying at the Quality Inn, Plaintiffs experienced issues with noise, not being able to connect to the internet, and having no towels in their room. (*Id*. at 19–20). O'Connell went to the front desk to complain about these issues. (*Id*. at 20).

Later that afternoon, Officer Joshua Morgan knocked on the Plaintiffs' hotel room door. (Dep. of Dean at 9). Dean answered the door and was asked by Officer Morgan if he could speak with O'Connell. (*Id*.). O'Connell came to the door, which was cracked open, and used his knee to keep the dog from leaving the room. (Dep. of O'Connell at 25).

Plaintiffs claim that Officer Morgan grabbed O'Connell by the throat and pulled him out of the room. (Dep. of O'Connell at 26–27, Dep. of Dean at 10). At this time Plaintiffs' dog escaped into the hallway. Plaintiffs claim that Officer Morgan walked after the dog down the hallway while they pleaded with him not to shoot the dog. (Dep.

2

of O'Connell at 27). O'Connell then grabbed the dog and put it back in the room. (*Id*. at 29). Officer Morgan then handcuffed him and stood on his spine. (*Id*. at 29).

Dean claims that, without any assistance from Officer Morgan, she got down to her knees and put her hands behind her head. (Dep. of Dean at 11). Dean claims that Officer Morgan hit her in head, threw her against the wall "eight or nine times," and bashed her head against the wall. (*Id*. at 14, 15). Furthermore, Dean claims that she went unconscious while being handcuffed by Officer Morgan. (*Id*. at 15).

**2. Defendants' version:**

On October 24, 2008, at about 1:25 p.m., Officer Morgan responded to a dispatch at the Quality Inn in South Bend, Indiana. (Morgan Aff. ¶ 3). The dispatch was regarding a man who was "belligerent and cussing" in the hotel lobby. (*Id*. at ¶ 4). Upon arriving, Officer Morgan spoke with an employee at the hotel who informed him that O'Connell was the belligerent individual. (*Id*. at ¶ 5). The employee also told Officer Morgan that O'Connell threatened her saying that he had a dog in his room that would "tear her to shreds." (*Id*.). Officer Morgan then went to O'Connell's hotel room. (Morgan Aff. ¶ 6).

While walking down the hallway to Plaintiffs' room, Officer Morgan smelled marijuana. (Morgan Aff. ¶ 7). When Officer Morgan knocked on the door, O'Connell and Dean opened it slightly. (*Id*. at 8). O'Connell stated that he was upset because some unknown person accused him of smoking marijuana. (*Id*. at 9). Officer Morgan claims that O'Connell became upset with him, and that he told him that he had a dog that was "trained to attack and was very vicious." (*Id*. at 10, 11).

3

While they were speaking, the dog ran out of the room at Officer Morgan, and he un-holstered his firearm and pointed it at the dog. (Morgan Aff. ¶ 14). O'Connell grabbed the dog and put it back in the room before it got to Officer Morgan. (*Id*.). Officer Morgan felt like he was in "imminent danger of being attacked by an aggressive dog." (*Id*. at 15). O'Connell approached him and told him to stop pointing his weapon at the dog. (*Id*. at 16). In response, Officer Morgan told O'Connell to keep his dog under control. (*Id*. at 17). However, O'Connell continued to approach Officer Morgan while his gun was drawn. (*Id*.).

At that point, Officer Morgan extended his arm and grabbed O'Connell by the shirt to keep him from getting any closer. (Morgan Aff. ¶ 18). Dean then grabbed Officer Morgan's arm and told him to let go of O'Connell. (*Id*. at 19). Officer Morgan told both Plaintiffs to turn around and put their hands behind their backs, but neither of them followed his instruction. (*Id*. at 20). While Officer Morgan was attempting to handcuff O'Connell, Dean stated that she was going back in the hotel room. (*Id*. at 21). Officer Morgan let go of O'Connell, and grabbed Dean. (*Id*. at 22). Dean pulled away from Officer Morgan, and he proceeded to spin her around, causing her to fall to the ground. (*Id*. at 23).

Again, Plaintiffs' dog came running out of the room at Officer Morgan. (Morgan Aff. ¶ 24). He released hold on Dean and un-holstered his weapon "in preparation for the dog's attack." (*Id*.). However, Dean grabbed the dog before it could get to Officer Morgan. (*Id*.). Officer Morgan felt as though he was in imminent danger because of the dog. (*Id*.).

4

At that point, Officer Morgan experienced no more resistance from Plaintiffs, and placed both of them under arrest for disorderly conduct and resisting arrest. (Morgan Aff. ¶ 26).

**3. Hotel Surveillance Video:**

The hotel surveillance video contradicts several of Plaintiffs' allegations and confirms Officer Morgan's account. First, Officer Morgan did not pull O'Connell out of the room by the throat. (Hotel Surveillance Video dated October 24, 2008). Instead, Plaintiffs' dog ran out of the hotel room directly towards Officer Morgan, as asserted by Officer Morgan in his affidavit. (*Id.*). Officer Morgan pulled out his weapon and pointed it at the dog, and O'Connell grabbed the dog before it reached Officer Morgan. (*Id.*) Furthermore, O'Connell was moving towards Officer Morgan when Officer Morgan grabbed Plaintiff by the shirt. (*Id.*). This happened while Officer Morgan's gun was still drawn and pointed at the dog. (*Id.*).

As Officer Morgan held O'Connell by the shirt, Dean grabbed Officer Morgan's arm. (*Id.*). At that time, Officer Morgan put O'Connell's hands behind his back and attempted to handcuff him. (*Id.*). Dean began to walk back towards the hotel room. Officer Morgan released O'Connell and grabbed her. (*Id.*). Dean resisted Officer Morgan, and Officer Morgan ultimately forced her to the ground. (*Id.*). Before going to the ground, Dean hit the hotel hallway walls twice as she was spun around. (*Id.*). Dean did not pass out but instead immediately stood up. (*Id.*)

Again, Plaintiffs' dog ran out of the room directly towards Officer Morgan. (*Id.*). Officer Morgan released Dean and drew his gun. (*Id.*). He pointed his gun at the dog, but

5

Dean grabbed the dog and took it into the hotel room. (*Id*.). As that was happening, O'Connell got down to his knees and was handcuffed by Officer Morgan. (*Id*.). Officer Morgan did not stand on O'Connell's spine. (*Id*.). Officer Morgan walked over to Dean, grabbed her, and she went to the ground on her own. (*Id*.). Officer Morgan then handcuffed Dean. (*Id*.). At no time does the video show Officer Morgan punching or kicking either Plaintiff. (*Id*.). The video does show the Plaintiffs' dog, on two occasions, running towards Officer Morgan. (*Id*.).

Plaintiffs agree that the video recording contradicts their version of the facts but claim that the video has been edited and, if it was shown in its entirety, it would corroborate Plaintiffs' account. (Pl. Br. at 5). Plaintiffs present no evidence in support of such a claim. The Court on the other hand sees no evidence of doctoring and finds the video to be an uninterrupted portrayal of the encounter between Plaintiffs and Officer Morgan.

**C. Qualified Immunity**

Officer Morgan asserts that he has qualified immunity and that he did not violate Plaintiffs' constitutional rights. The Supreme Court has held that the question of qualified immunity turns on the "objective legal reasonableness" of an officer's conduct "in light of the legal rules that were clearly established at the time." *Pearson v. Callahan*, 555 U.S. 223, 244 (2009). Furthermore, an officer is entitled to qualified immunity where "clearly established law" does not show a constitutional violation. *Id*. at 243. Once qualified immunity has been raised, it is the plaintiff's burden to demonstrate the violation of a clearly established right. *Foreman v. Richmond Police Dept.*, 104 F.3d 950, 957 (7th Cir.

1997). The doctrine of qualified immunity is immunity from suit rather than a mere defense to liability. *Mitchell v. Forsyth*, 472, U.S. 511, 526 (1985).

**D. Analysis**

Plaintiffs assert a Fourth Amendment claim against Officer Morgan and allege that he used excessive force and arrested them without probable cause. Plaintiffs also assert a state law claim under the Indiana Tort Claims Act.

**1. Plaintiffs' False Arrest Claims**

Plaintiffs claim that Officer Morgan arrested them unlawfully because he did not have probable cause. Plaintiffs claim that Officer Morgan did not have an objective good faith belief that Plaintiffs were guilty of an offense.

To determine whether an officer acted with probable cause, a court must "examine the events leading up to the arrest" and whether there was a "reasonable ground for belief of guilt." *Maryland v. Pringle*, 540 U.S. 366, 370–371 (2003). The Court examines the facts from "the standpoint of an objectively reasonable police officer." *Id*. at 371. Probable cause is a "nontechnical" concept that deals with "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Illinois v. Gates*, 42 U.S. 213, 231 (1983).

Here, Officer Morgan had probable cause to arrest Plaintiffs. First, Officer Morgan responded to a dispatch, and upon arriving to Quality Inn, found out that an employee had been physically threatened by O'Connell. In Indiana, threatening another person "that the other person engage in conduct against the other person's will; [or] that

7

the other person be placed in fear of retaliation for a prior lawful act" constitutes intimidation, a Class A misdemeanor. Ind. Code 35-45-2-1(a). This gave Officer Morgan probable cause to arrest O'Connell. Moreover, once Officer Morgan went to Plaintiffs' hotel room, he smelled an odor of marijuana in the hallway.[1] And, when Plaintiffs' dog got out of the room and ran towards Officer Morgan, O'Connell ignored instructions and continued approaching Officer Morgan. Furthermore, Dean had her hands on Officer Morgan as he was apprehending O'Connell. Under Indiana law, an individual who "forcibly resists, obstructs, or interferes with a law enforcement officer . . . while the officer is lawfully engaged in the execution of the officer's duties . . . commits resisting law enforcement, a Class A misdemeanor." Ind. Code § 35-44-3-3(a)(1). Hence, Officer Morgan had probable cause to arrest Plaintiffs.

In summary, Officer Morgan had probable cause to arrest Plaintiffs because a reasonable officer in his position could have believed that O'Connell and Dean committed criminal offenses under Indiana law when O'Connell threatened the hotel employee and when both of them acted disorderly and did not comply with his orders.

**2. Plaintiffs' Excessive Force Claims**

Plaintiffs claim that Officer Morgan used excessive force when he arrested them. Dean claims that Officer Morgan threw her into several walls, hit her in the head repeatedly while she was handcuffed, and bashed her head against the wall. O'Connell claims that Officer Morgan pulled him out of the hotel room by the throat and stood on his spine while he was handcuffing him.

---

[1] Upon opening the door, O'Connell was claiming that someone falsely accused him of smoking marijuana.

Police seizures using excessive force violate the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Whether a search included excessive force is examined under the "objective reasonableness" standard. *Id*. at 396–97. The force used must be viewed through the lens of a reasonable officer at the scene, and courts must allow for the fact that police often must make split-second judgments in tense situations. *Id.* at 396. The force used must be reasonable in light of all the circumstances. *Id*. "Not every push or shove, even if it may seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment. *Id*.

In this case, Plaintiffs and Officer Morgan tell very different versions of the events. However, the hotel's surveillance tape is in striking contrast to Plaintiffs' version. For example, Plaintiffs claim that Officer Morgan pulled O'Connell out of the hotel room by his throat. The video shows that this did not happen. Also, Plaintiffs claim that their dog did not run towards Officer Morgan. The video shows that the dog ran directly at Officer Morgan two separate times. Plaintiffs claim that Officer Morgan slammed Dean into several walls, kicked and punched her in the head, and bashed her head against the wall. None of this is substantiated by the video tape. Instead, Dean is seen hitting the walls twice as she resist handcuffing and is spun around by Officer Morgan. Dean does not pass out and she is able to quickly get up.

The Supreme Court has held that video evidence substantiating one party's version of events can serve as controlling evidence at the summary judgment stage. *Scott v. Harris*, 550 U.S. 372, 380--381 (2007). In that case, the Court considered video evidence that came from a camera inside a police car, and allowed that evidence to resolve the parties' conflicting factual accounts. *Id*. at 380. More specifically, the Court

refused to accept plaintiff's facts because the video evidence directly contradicted his version of events. *Id*. The Court held that "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id*.

Still, Plaintiffs' speculate that the hotel surveillance video has been edited and does not show entirely what happened. Plaintiffs' provide no support for their bald claim. On the other hand, Defendants' have provided a sworn affidavit from Chad Hiatt, forensic video analyst for the South Bend Police Department, testifying that the video is a true, accurate and unaltered copy of the original. (Hiatt Aff. ¶ 3). Since Defendants have offered sworn affidavits supporting the accuracy of the video, and Plaintiffs have offered no evidence that it was edited, Plaintiffs' claim that the video is edited is without merit.

In light of the content on the video surveillance tape, there is no genuine issue of material fact as to the objective reasonableness of Officer Morgan's actions. Officer Morgan was told O'Connell threatened an employee at the hotel and was acting belligerent. Plaintiffs' dog ran at Officer Morgan on two separate occasions. O'Connell ignored Officer Morgan and walked towards him in the hallway. Dean ignored Officer Morgan's instruction to stay put and instead started to walk back toward the hotel room. Dean grabbed Officer Morgan's arm while he was apprehending O'Connell. Both Plaintiffs resisted arrest.

The law "proscribes only unreasonable searches and seizures." *Graham v. O'Connor*, 490 U.S. 386, 397 (1989). Therefore, the threshold question is whether an officer's conduct was objectively reasonable. *Id*. Under the facts set forth by Officer

Morgan and substantiated by the surveillance video, no reasonable jury could find his force excessive. Because the Court finds that no constitutional violation has occurred, Officer Morgan is entitled to qualified immunity.

**3. Defendants' Motion is granted as to claims against City of South Bend**

Because Plaintiffs are unable to establish a basis for liability against Officer Morgan, their claims against the City of South Bend fail as well.[2]

**4. Defendant's Motion is granted as to state law claims against Defendants**

Plaintiffs failed to satisfy the provisions of the Indiana Tort Claims Act. This Act requires a plaintiff to provide timely notice of to a municipal defendant within 180 days after the loss occurs. Ind. Code § 34-13-3-8 (2011). However, Plaintiffs failed to provide notice on time. Therefore, Defendants are entitled to summary judgment on Plaintiffs' state claims.

**E. Conclusion**

Because there is no genuine issue of material fact as to whether Officer Morgan had probable cause to arrest Plaintiffs, and he used reasonable force in effectuating the arrests, the Court grants summary judgment in favor of Defendants on Plaintiffs' Fourth Amendment claims. Likewise, because Plaintiffs did not comply with the provisions of the Indiana Tort Claims Act, the Court grants summary judgment in favor of Defendants on the state claims as well.

---

[2] In any case, the South Bend Police Department is not a proper Defendant because "a city's police department is merely a vehicle through which the city government fulfills its policy functions." *Jones v. Bowman*, 694 F. Supp. 538, 544 (N.D. Ind. 1988).

SO ORDERED on April 5, 2012.

    s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE